IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PASQUALE MARTORANA and PHILIP MARCANTELLI, <br><br> Plaintiffs, <br><br> v. <br><br> GREG TOSTO, Individually, and as an agent of the Village of Elmwood Park; THE VILLAGE OF ELMWOOD PARK; and ANGELO "SKIP" SAVIANO, President of the Village of Elmwood Park, in his individual capacity, <br><br> Defendants. | Case No. 16 C 4057 |

## MEMORANDUM OPINION AND ORDER

Pasquale Martorana ("Martorana") and Philip Marcantelli ("Marcantelli") brought this action against Greg Tosto ("Tosto"), the Village of Elmwood Park (the "Village") and Village President Angelo "Skip" Saviano ("Saviano"), alleging that the defendants acted to discourage Martorana and Marcantelli from engaging in Village politics. Now before this Court is a motion by the Village and Saviano to dismiss the Complaint under Fed. R. Civ. P. ("Rule") 12(b)(6) for failure to state a claim on which relief can be granted.

### Motion To Dismiss Standards

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the district court to accept as true all of Martorana's and Marcantelli's well-pleaded factual allegations and view those allegations in the light most favorable to them as the non-moving parties (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013)). But "legal conclusions or conclusory

allegations that merely recite a claim's elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

In the past decade the Supreme Court made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as the "Twombly-Iqbal canon," a usage drawn from Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as more finely tuned in Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), and Ashcroft v. Iqbal, 556 U.S. 662 (2009)). That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted)). As McCauley went on to reconfirm, claimants "must give enough details about the subject-matter of the case to present a story that holds together" (id.).

Because the focus of Rule 12(b)(6) motions is on the pleadings, they "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for it "may elaborate on [its] factual allegations so long as the new elaborations are consistent with the pleadings" (id.).

In granting a dismissal courts should usually give a claimant at least one opportunity to amend (Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 519 (7th Cir. 2015)). And consistently with the principles of Rule 15(a)(2), courts generally grant leave to amend freely. But where "it is certain . . . that any amendment would be futile or otherwise unwarranted," the court can deny leave to amend (id. at 519-20, emphasis in original).

Supplemental state law claims advanced pursuant to 28 U.S.C. § 1367(a) may be dismissed without prejudice when all federal claims are dispatched before trial (Pugel v. Bd. of Trs. of the Univ. of Ill., 378 F.3d 659, 669 (7th Cir. 2004)).  Indeed, as Carr v. CIGNA Sec., Inc., 95 F.3d 544, 546 (7th Cir. 1996) has taught:

> The general rule, when the federal claims fall out before trial, is that the judge should relinquish jurisdiction over any supplemental (what used to be called "pendent") state law claims in order to minimize federal judicial intrusion into matters purely of state law.

Three limited exceptions to that rule are identified in Williams Elec. Games, Inc. v. Garrity, 479 F.3d 904, 907 (7th Cir. 2007):  (1) "where the statute of limitations would bar the refiling of the supplemental claims in state court," (2) "where substantial federal judicial resources have already been expended on the resolution of the supplemental claims" and (3) "where it is obvious how the claims should be decided."

**Background**[1]

While the Complaint does not list any residence other than Downers Grove for Marcantelli (see Complaint ¶¶ 6), he was active in Village politics, founding the Neighborhood Voice Party in opposition to the United Party -- the party that was supported by both Saviano and then-Village President Peter Silvestri ("Silvestri") -- and then running for Village Trustee in the April 5, 2011 election (Complaint ¶¶ 12, 14, 21).  Aside from those activities, he worked as a Cook County Probation Officer (Complaint ¶ 6).

Martorana resides in the Village and from 2000 to 2011 worked for it as a code inspector (Complaint ¶¶ 5, 11).  He had signs posted on various properties he owned in the Village supporting Marcantelli's 2011 bid for Trustee (Complaint ¶ 15).

---

[1] This opinion refers to the parties' memoranda as "Mem. --" or "Reply --" as appropriate, with identifying prefixes of "V." for the Village and Saviano and "M." for Martorana and Marcantelli.

- 3 -

Both Marcantelli and Martorana allege that they were retaliated against as a result of their political activity. Twice -- in August 2010 and March 2011 -- Marcantelli was investigated for misusing government time based on anonymous complaints from, he was told, "someone 'who holds a lot of weight' in county government," and each time no evidence of wrongdoing was found (Complaint ¶¶ 13, 18). More ominously, on March 24, 2011 someone with a bb gun shot out the windows where the Neighborhood Voice Party candidates were standing at their campaign office (Complaint ¶¶ 19-20). As for Martorana, he was confronted in February 2011 by a Village employee and precinct captain for the rival United Party who suggested that his job would be in jeopardy if the signs supporting Marcantelli were not removed from his properties (Complaint ¶ 16). And two weeks after Marcantelli lost the 2011 election an investigation was launched into Martorana's conduct as a Village code inspector, following which he was told that he had to resign by May 1 or be fired (Complaint ¶¶ 22-23).

In response, on May 6 Martorana accused the Village leadership of corruption and misconduct in communications to the Illinois Office of the Attorney General, the Better Government Association and Fox News (Complaint ¶ 24). One day after Fox News interviewed Silvestri regarding Martorana's allegations, Martorana himself was arrested on June 9, 2011 for allegedly forging forms he had submitted in the course of his duties (Complaint ¶¶ 26-27). Later that month he was indicted on three counts of official misconduct and two counts of forgery, and he was then fired in August 2011 (Complaint ¶¶ 28-29).

On August 1, 2012 Martorana filed a federal action (the "2012 Lawsuit") against Silvestri, the Village Manager and the supervisor who had told him to resign or be fired, as well as against the Village itself (Complaint ¶ 32; S. Mem. Ex. C). Martorana was ultimately acquitted of the criminal charges on March 19, 2013, so that his amended complaint in the 2012

Lawsuit alleged malicious prosecution in addition to violation of the Illinois Whistleblower Act and First Amendment Retaliation under 42 U.S.C. § 1983[2] (id.).

While the 2012 Lawsuit and Martorana's criminal indictment were still pending, Marcantelli switched political parties, joining the People's Choice Party on December 5, 2012 (Complaint ¶ 33). That party was led by Saviano and included members of both the Neighborhood Voice Party and the United Party (Complaint ¶ 33).

Martorana's 2012 Lawsuit settled on October 1, 2014, with a written settlement agreement to follow (Complaint ¶ 35). Part of the oral October 1 settlement required the parties to keep the underlying facts and the amount of the settlement confidential (Complaint ¶ 35).[3] Saviano nevertheless texted Marcantelli that night, disclosing both the amount of the settlement and the fact that it included a confidentiality provision (Complaint ¶ 36).

In early 2015 Martorana sent the Village a number of requests under the Illinois Freedom of Information Act ("FOIA") (Complaint ¶¶ 39, 42, 43), several of which requests yielded information used in news stories (Complaint ¶¶ 47, 48). Martorana further expressed a continued interest in running for office and staying involved with the Village (Complaint ¶ 44).

That caused some difficulty for Marcantelli, who it should be remembered was now allied with Saviano's People's Choice Party. Three days after Martorana sent the first of those FOIA requests, Saviano began sending text messages to Marcantelli telling him to "stay away" from Martorana and indicating that Saviano would have Martorana thrown in jail (Complaint

---

[2] Further references to Title 42 provisions take the form "Section --," omitting the prefatory "42 U.S.C."

[3] Martorana and Marcantelli describe that confidentiality provision as a "gag order" (Complaint ¶ 35), but the docket in the case (Martorana v. Vill. of Elmwood Park, No. 12-C-6051 (N.D. Ill.)) reflects no such order.

¶ 40). And the day after Marcantelli was threatened by individuals from the People's Choice Party for posting a photo to Facebook that referred to his earlier campaign with the Neighborhood Voice Party, Saviano told him that Martorana was being investigated by the State's Attorney and was having his internet activity tracked, warning that Marcantelli would be included in that investigation if he continued to be involved with him (Complaint ¶¶ 45-46). When Saviano told Marcantelli on April 6, 2015 that Martorana would be confronted by Saviano's mother and several of her friends at every board meeting, Marcantelli advised Martorana to stay away (Complaint ¶ 49-50). And three days later Saviano admitted to Marcantelli at dinner that he intended to have Martorana framed for a crime (Complaint ¶ 51).

Soon afterward Marcantelli resigned from the People's Choice Party and stopped working with Saviano (Complaint ¶ 52). On July 18, 2015 he received a text message from an unknown phone number telling him to stay in Downers Grove because "there is a 'bounty on your head'" (Complaint ¶ 58).

In something of a reversal, Martorana was the subject of FOIA requests filed with the Village on June 3 and 18, 2015 (Complaint ¶¶ 54, 55). But the Village's responses to those requests did not redact any of his personal information, including his social security number (Complaint ¶¶ 54, 57). Later, when Martorana himself notified the Village that it had disclosed his social security number, the response was deleted (Complaint ¶ 57). And on July 2, 2015 he was told that his Village Voice Party would not be permitted to participate in the Village's Fourth of July parade due to "lack of credentials" (Complaint ¶ 56). Undaunted, Martorana continued to send FOIA requests to the Village from August 2015 through February 2016 (Complaint ¶¶ 60-63).

Then on February 22, 2016 Tosto -- a resident of Palatine (Complaint ¶¶ 10) -- began posting to Facebook a series of what would, by the time this action was filed, become 18 videos about Martorana, Marcantelli and another individual associated with them politically (Complaint ¶¶ 64-67, 69, 71, 75, 77-82, 84-87). In those videos Tosto made remarks that plaintiffs characterize as defamatory and threatening. Tosto would also post that he was at Marcantelli's place of work (Complaint ¶ 68, 76) or the Downers Grove Village Hall (Complaint ¶ 70).

In the first video Tosto indicated that he was "family friends with Saviano" and had donated money to his causes (Complaint ¶ 64), and two days later he apologized to Saviano for not having made it to a fundraiser (Complaint ¶ 66). Throughout the series Tosto blamed Martorana and Marcantelli for interfering in Village affairs (Complaint ¶ 65, 69, 71, 75, 80, 81), and at various points he promised to stop making the videos if they withdrew from Village politics (Complaint ¶ 71, 75, 77). Martorana and Marcantelli also draw attention to the fact that Tosto voiced support on Facebook for a civic group that favors Saviano (Complaint ¶ 72) and for the Village's building a bocce ball court (Complaint ¶ 83, 85). At one point in the videos Tosto also said that "someone" told him to change his tactics because he has to watch what he says on that medium (Complaint ¶ 78).

Martorana and Marcantelli brought this action on April 5, 2016. Its Counts I - IV assert that the Village and Saviano violated their First Amendment rights, with each of Martorana and Marcantelli bringing separate counts under Sections 1983 and 1985. Count XXVI alleges a civil conspiracy by Saviano, the Village and Tosto actionable under both federal and state law (see Complaint ¶¶ 1, 3). But the remainder of the Complaint's various counts are grounded in state law. Saviano and the Village are targeted with allegations that Saviano's text to Marcantelli about Martorana's settlement in the 2012 Lawsuit breached their confidentiality agreement with

the latter (Count V) and that they tortiously interfered with Marcantelli's employment contract by making false complaints about his work conduct (Count VII). Martorana brings Count VI against the Village alone for allegedly violating FOIA by including his personal information in responding to a request.[4] Tosto is alleged to have injured both plaintiffs by committing defamation (Counts VIII - XIX) and common law assault (Counts XX and XXI), and Martorana and Marcantelli seek to hold all three defendants liable on theories of intentional infliction of emotional distress (Counts XXII and XXIII), negligent infliction of emotional distress (Counts XXIV and XXV) and civil conspiracy (Count XXVI).

### **First Amendment Claim**

Both Section 1983 and Section 1985 take their applicable limitations period from state law, which in Illinois is two years (see Manley v. City of Chicago, 236 F.3d 392, 395 (7th Cir. 2001)). Thus any retaliation that Martorana and Marcantelli allege occurred before April 5, 2014 cannot (absent any argument for tolling) form the basis of a claim for relief -- a point they concede (M. Mem. 2). And while it is ordinarily improper to grant a Rule 12(b)(6) motion to dismiss on the basis of an affirmative defense such as the statute of limitations, where that infirmity is plain on the face of the complaint it can sustain such a dismissal (U.S. Gypsum Co. v. Ind. Gas Co., 350 F.3d 623, 626 (7th Cir. 2003)).[5]

---

[4] Martorana initially brought Count VI under the federal FOIA, but he now concedes that it must be brought under Illinois' FOIA (M. Mem. 9).

[5] Saviano and the Village also raise claim preclusion and release based on the 2012 Lawsuit and its settlement agreement (V. Mem. 8-9; V. Reply 1-2), but those defenses (1) happen to cover the same acts that are barred by the statute of limitations with respect to Sections 1983 and 1985 -- no relevant event is alleged to have occurred between April 5 and November 14, 2014 -- and (2) would not apply to Marcantelli's injuries, in addition to which those defenses have questionable applicability to Saviano. Hence this opinion will not address any impact that the 2012 Lawsuit might have on the Complaint.

Moreover, Section 1983 reaches only actions taken under color of state law (London v. RBS Citizens, N.A., 600 F.3d 742, 745-46 (7th Cir. 2010)). On that subject Estate of Sims v. County of Bureau, 506 F.3d 509, 515-16 (7th Cir. 2007) (internal quotation marks and citations omitted) has explained:

> Not every action taken by a state official is considered to have occurred under color of state law. An action is taken "under color of state law" if it involves a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.

And the test for holding private actors liable under Section 1983 is stringent enough so as not to require full elucidation in this case (see London, 600 F.3d at 746). Instead it suffices to say that to establish a Section 1983 claim on the basis of a conspiracy there must be more than just an agreement to deprive the plaintiff of his civil rights -- the claim must be supported by further evidence (or here, an allegation) that the private defendants "were willful participants in joint activity with the State or its agents" (Lewis v. Mills, 677 F.3d 324, 333 (7th Cir. 2012)).

To be sure, some purely private conspiracies can be actionable under Section 1985(3) (Brokaw v. Mercer County, 235 F.3d 1000, 1024 n.20 (7th Cir. 2000)). But United Bhd. of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 832 (1983) long ago held that "a conspiracy to violate First Amendment rights is not made out without proof of state involvement."

Tosto's various videos and posts clearly are not actions taken under color of state law simply because they might have been, as Martorana and Marcantelli allege, coordinated by someone who was otherwise a state actor. Nothing supports the case caption's assertion that an agency relationship existed between Tosto and the Village. And even if the "someone" who told Tosto to change his tactics in those videos was indeed Saviano (see Complaint ¶ 78), any such instructions would clearly not have been "made possible only because [he was] clothed with the

authority of state law" -- that is, acting in his capacity, and within the scope of his authority, as Village President. Because Saviano thus would not himself have been acting under color of state law in directing Tosto, by definition Tosto was not acting in concert with a state actor. Consequently -- and more to the point, because Tosto has not joined in the Village's and Saviano's motion -- Tosto's actions cannot be imputed to Saviano and then through him to the Village by the simple expedient of alleging a conspiracy.

By the same token, Saviano's remarks at dinner -- threatening a clearly illegal action -- were neither the misuse or the threatened misuse of Saviano's own authority as Village President (see Complaint ¶ 51). Nor does his ability to organize his mother and her friends for political purposes flow from his official capacity (see Complaint ¶ 49-50). So too with his other threats (see Complaint ¶¶ 40 and 46). That result serves to scuttle Martorana's and Marcantelli's <u>Monell</u> claims against the Village for those actions as well.

Instead the only actions alleged in the Complaint that were taken under color of state law are (1) the asserted refusal to permit Martorana's Village Voice Party to participate in the 2015 Fourth of July parade (Complaint ¶ 56) and (2) the disclosure of Martorana's private information in responding to a FOIA request (Complaint ¶ 54, 57). Both plaintiffs' arguments about those alleged adverse actions are threadbare, however (see M. Mem. 5, 6), and the Complaint is similarly lacking in specific allegations.

Crucially Martorana and Marcantelli do not allege <u>who</u> is responsible for either allegedly wrongful act (see Complaint ¶¶ 54, 56, 57). Moreover, absent further elaboration on the circumstances and reason for the parade denial -- there is no allegation that Martorana did have the right credentials or that the requirement for credentials was itself a sham -- the Complaint does not contain enough factual information to state a plausible claim for a First Amendment

violation. And the Complaint does not say what personal information was disclosed beyond Martorana's social security number -- which now is no longer available (Complaint ¶ 57) -- such that said disclosure would, as <u>Santana v. Cook County Bd. of Review</u>, 679 F.3d 614, 622 (7th Cir. 2012) tells us is required to state a First Amendment retaliation claim, "deter an ordinary person from engaging in . . . First Amendment activity in the future."

In that regard this Court notes the teaching in <u>Fairley v. Andrews</u>, 578 F.3d 518, 526 (7th Cir. 2009) that where all the defendants are state actors, "a § 1985(e) claim does not add anything except needless complexity." Thus, if Martorana is able to amend the Complaint to state a claim under Section 1983 for the denial of his parade permit or the retaliatory disclosure of his personal information, the only predicate for restating Count III on those matters would be a plausible allegation that the responsible party engaged in that conduct as the result of a conspiracy involving a non-state actor.

## **Supplemental Jurisdiction**

With no viable federal claim having survived scrutiny, the familiar teaching of <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726-27 (1966) and its progeny (now codified in 28 U.S.C. § 1367(c)(3)) is, as stated earlier in this opinion, "[t]he general rule . . . that the judge should relinquish jurisdiction over any supplemental (what used to be called 'pendent') state law claims" (<u>Carr</u>, 95 F.3d at 546). And although Tosto has not joined the present motion to dismiss -- indeed, there is a motion for an order of default pending against him (see Dkt. No. 10) -- he is present in this case only as a defendant to plaintiffs' state-law counts and to Count XXVI, which advances both federal and state causes of action under the vague heading of "Civil Conspiracy." It would be very odd and indeed wasteful of judicial resources to refuse to exercise jurisdiction over the Village and Saviano regarding Counts XXII - XXV but to retain it over Tosto on the ground that he did not join in their motion -- or to retain jurisdiction over the

movants with respect to those counts when no federal claim lies against them solely because Tosto's having gone AWOL means that he also has not moved for a dismissal of the federal claim against him.

Thus, because the reasons that sink the federal aspect of Count XXVI with respect to Saviano apply with equal force to Tosto, with the result that no federal claim lies against him either, this Court will ignore the fact that Tosto did not join in the present motion except to the extent that it will not dismiss any claim against him with prejudice. And so the Complaint as a whole ought to be dismissed -- and it is.

## **Conclusion**

Saviano's and the Village's motion (Dkt. No. 6) is granted, and the Complaint is dismissed. That dismissal is without leave to amend with respect to (1) Counts II and IV in their entirety and (2) Counts I and III except as they relate to Martorana's inability to participate in the Village's 2015 Fourth of July parade and the allegedly retaliatory disclosure of his personal information. If Martorana believes that his First Amendment claims concerning those injuries can be salvaged, he must file (1) a proposed amended complaint and (2) an explanation of changes made on or before July 26, 2016 (with a Judge's Copy being contemporaneously delivered to this Court's chambers [see LR 5.2(f)]), failing which Counts I - IV and (insofar as it pleads a federal cause of action against the Village and Saviano) Count XXVI will be dismissed with prejudice on July 27, 2016, with the remaining counts (including Count XXVI insofar as it is brought against Tosto or on a state law theory of recovery against the Village or Saviano) being dismissed without prejudice.

_____
Milton I. Shadur
Date: July 5, 2016                                     Senior United States District Judge